**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

JUANITA SMITH, ET AL.                    CIVIL ACTION NO. 19-1261

VERSUS                                   JUDGE ELIZABETH E. FOOTE

JC LEE, ET AL.                           MAG. JUDGE KAYLA D. MCCLUSKY

## <u>MEMORANDUM RULING</u>

Before the Court is a motion for summary judgment, filed by the Defendants in the above-captioned matter.  [Record Document 44].  The Defendants seek dismissal of all federal and state-law claims brought against them by Plaintiffs Juanita Smith and Floyd Stewart. The Plaintiffs oppose the motion, and the matter is now ripe for review.  For the reasons set forth below, the Defendants' motion is granted in part and denied in part.

## <u>BACKGROUND</u>

The events in this case stem from the Shreveport Police Department's search for Christian Combs ("Combs") to execute a warrant for second degree murder.  On October 4, 2018, the police received information that Combs was hiding at either 1906 State Street or 1913 State Street in Shreveport, Louisiana.  That day, officers went first to 1906 State Street where it was determined Combs was not hiding.  They then proceeded across the street to 1913 State Street, the home of the Plaintiff, Juanita Smith ("Smith").  A group of officers went to the front door to speak to Smith, while other officers established a perimeter around the house.  The Defendants, Corporal Derek Barker, Corporal John Lee, and Officer Christopher McConnell, were three of the officers on the scene that day.  The remaining officers present at the scene have not been named as Defendants in this case.

1

When Smith answered the door, the officers informed her that they were looking for Combs and asked whether she knew him.  She said she did not.  Almost all of the events following that initial discussion are the subject of much debate.  The Defendants contend that Smith agreed to step outside to talk to them, while Smith disagrees with that characterization; but, she does not allege that officers forcibly removed her from her home.  In any event, Smith ultimately stood in her driveway while speaking with the officers.  Defendants represent that officers asked Smith numerous times whether anyone was inside the home and that she said no.  Smith acknowledges that she told the officers no one else was inside, but she claims that she misunderstood the question and thought they were asking if Combs was inside.[1]

Corporal Lee and his police canine, Dice, then proceeded to the front door of Smith's home.  Defendants contend that Corporal Lee gave three loud warnings at the front door, telling anyone inside that a police canine was present and to come out and identify themselves.  On the third warning, Defendants state that Corporal Lee warned that the dog would enter and would bite.  No one spoke up from inside the house.  It is undisputed that Corporal Lee and Dice then entered Smith's home, and Corporal Lee gave Dice the command to "find the man."  Dice proceeded around a corner into a hallway and came into contact with Plaintiff Floyd Stewart ("Stewart"), an elderly man.  Stewart evidently had been sleeping inside a bedroom in the residence.  When Stewart heard the noise from outside, he put on his shoes and went to the bedroom door where he countered Dice.

---

[1] As established later, Combs was not, in fact, inside Smith's residence, nor is there any evidence he was ever hiding there.

Dice bit Stewart.  Ultimately, upon realizing Stewart was not Combs, Corporal Lee made Dice release Stewart from his bite.  Although it is not relevant to the issues before the Court today, the Defendants concede that Smith, who identified Stewart as a friend, may not have known Stewart had returned to her house and was sleeping inside at the time of the incident.[2]  Stewart was treated for his injuries.  Combs was not located at Smith's residence.

Smith and Stewart brought suit against the City of Shreveport, Corporal Lee, Corporal Barker, and Officer McConnell under 42 U.S.C. § 1983 for the constitutional violations of unlawful entry, excessive force, and failure to train.  Plaintiffs also brought analogous state law claims, in addition to claims of negligence and strict liability for dog bites.  Defendants filed the instant motion seeking summary judgment on all claims.  While the Defendants concede that there are factual disputes in this case, they nonetheless argue that the officers are entitled to qualified immunity because their actions were objectively reasonable, even if mistaken.  As to the City, they argue that there is no policy or custom upon which to base municipal liability for failure to train.  Defendants seek summary judgment on the state law claims, as well, arguing that the claims with federal counterparts, along with Plaintiffs' claims of negligence, are subject to dismissal for the same reasons the federal claims should be dismissed.  As to Plaintiffs' claim of strict liability for dog bites, Defendants argue there is no legal basis for such a claim.  Plaintiffs oppose the summary judgment motion.

---

[2] Stewart represents that he lived in Smith's home.  Record Document 47, p. 21.

**LAW AND ANALYSIS**

I.   Qualified Immunity.

Defendants raise the defense of qualified immunity in response to Plaintiffs' Section 1983 claims.  Section 1983 provides a federal cause of action for the "deprivation of any rights, privileges or immunities secured by the Constitution and laws" against any person acting under color of state law.  42 U.S.C. § 1983.  Section 1983 does not itself create substantive rights; rather, it merely provides remedies of rights guaranteed to citizens by the United States Constitution or other federal laws.  See Graham v. Connor, 490 U.S. 386, 393-94, 109 S. Ct. 1865, 1871 (1989); City of Oklahoma City v. Tuttle, 471 U.S. 808, 816, 105 S. Ct. 2427, 2432 (1985).  The doctrine of qualified immunity shields government officials from liability for claims against them in their individual capacity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982).   Qualified immunity serves to shield government officials from harassment, distraction, and liability when they perform their duties reasonably, and it applies regardless of whether the official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting Groh v. Ramirez, 540 U.S. 551, 567, 124 S. Ct. 1284 (2004) (Kennedy, J., dissenting)).  A Section 1983 complaint must allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence.  Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994); Daniels v. Williams, 474 U.S. 327, 332, 106 S. Ct. 662 (1986).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability, . . . it is effectively lost if a case is erroneously permitted to go to trial." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985). Consequently, qualified immunity questions should be resolved at the earliest possible stage in litigation. <u>See</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S. Ct. 534 (1991) (per curiam). While qualified immunity is technically an affirmative defense, once it has been raised, it is the plaintiff's burden to negate the defense. <u>Poole v. City of Shreveport</u>, 691 F.3d 624, 627 (5th Cir. 2012).

In <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001), the Supreme Court held that a court ruling upon the issue of qualified immunity must apply a two-step analysis. First, the court must determine whether "the facts alleged show the officer's conduct violated a constitutional right." <u>Id.</u> Second, if a violation has been established, the court must determine whether the officer's actions were objectively reasonable in light of clearly established law at the time of the conduct in question. <u>See id.</u>; <u>Freeman v. Gore</u>, 483 F.3d 404, 411 (5th Cir. 2007). The court may evaluate these steps in whichever order it so chooses.[2] "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." <u>Goodson v. Corpus Christi</u>, 202 F.3d 730, 736 (5th Cir. 2000). If officers of reasonable competence could disagree

---

[2] In <u>Pearson</u>, the Supreme Court held that while the sequence set forth in <u>Saucier</u> is often appropriate, it is no longer mandatory. <u>Pearson</u>, 555 U.S. at 236. Instead, lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Id.</u>

as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.  See Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005) (citing Malley v. Briggs, 475 U.S. 335, 343, 106 S. Ct. 1092 (1986) (holding the qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law."))  The question of whether an official's conduct was objectively reasonable is a question of law to be decided by the court.  See Evett v. DETNTFF, 330 F.3d 681, 688 (5th Cir. 2003) (citing Mangieri v. Clifton, 29 F.3d 1012, 1016 (5th Cir. 1994)).

To be clearly established, a legal principle must be found in the holdings of either "controlling authority" or a "robust 'consensus of cases of persuasive authority,' " Ashcroft v. al-Kidd, 563 U.S. 731, 741–42, 131 S. Ct. 2074 (2011) (quoting Wilson v. Layne, 526 U.S. 603, 617, 119 S. Ct. 1692 (1999)), and defined with a "high 'degree of specificity,'" District of Columbia v. Wesby, —U.S.—, 138 S. Ct. 577, 590 (2018) (quoting Mullenix v. Luna, 577 U.S. 7, 13, 136 S. Ct. 305, 309 (2015) (per curiam).  It is not that a case must be directly on point, but rather existing precedent must have provided sufficient notice that the acts violate the Constitution.  See Darden v. City of Fort Worth, 880 F.3d 722, 727 (5th Cir. 2018). The "clearly established" test ensures that officials have "fair warning" that particular conduct violates the Constitution.  Anderson v. Valdez, 845 F.3d 580, 600 (5th Cir. 2016) (quoting Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir. 2004) (en banc)).

Under either of the two prongs, the Court "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Winzer v. Kaufman Cnty., 916 F.3d 464, 473–74 (5th Cir. 2019) (quoting Tolan v. Cotton, 572 U.S. 650, 134 S. Ct. 1861, 1866

(2014)). Instead, the Court must view the evidence in the light most favorable to the opposing party, here the Plaintiffs.  Id.

II.    Disputed Facts.

As observed above, there are a number of facts in dispute in this case.  One of the primary disputes is whether officers asked for and received consent to enter Smith's home in the first place.  They contend that they did, while Smith states that they did not. Defendants recognize the Court cannot resolve this factual dispute on summary judgment. They submit, instead, that Smith provided implied consent for them to enter her home and that the officers are entitled to qualified immunity.

The parties also dispute whether officers asked Smith if anyone else was inside the home.  The officers contend they did, but Smith claims she thought they were asking whether Combs was inside.  Another dispute is whether Corporal Lee issued warnings to the occupants of Smith's house before releasing Dice.  Again, the officers claim that he did, but the Plaintiffs disagree that the warnings, if issued, were loud enough to be heard by Stewart inside the house.

Another significant dispute relates to the duration of Dice's attack and the number of bites Dice inflicted upon Stewart, as well as how responsive Dice was to being ordered to release.  The Defendants state Dice bit Stewart one time and that once Corporal Lee realized Dice was biting the wrong person, he gave Dice the command to release and also grabbed Dice's collar, and thereafter Dice released.  Stewart, on the other hand, contends that Lee did not force Dice to immediately release the bite but instead "move[d] to the scene without taking action."  Record Document 47, p. 22.  Stewart argues that Dice did

not respond to Corporal Lee's verbal command and consequently, Corporal Lee had to grab Dice's collar in a "choke off" to force Dice to let go.  Stewart alleges Dice bit him multiple times during an encounter that lasted at least one minute.  Stewart points to his medical records that he says document at least two bites to the legs and a bite to the thumb.[3]

As discussed in more detail below, all of these facts are disputed in ways material to this Court's ability to decide the legal entitlement to qualified immunity for Corporal Lee and Corporal Barker on the Plaintiffs' Section 1983 claims arising from violation of their Fourth Amendment rights.[4]

A.    Spoliation.

The Court will briefly address the Plaintiffs' request for an adverse inference under the spoliation doctrine.  Specifically, the Plaintiffs are targeting the lack of body cam footage from Corporal Lee that, under ideal conditions, could have resolved many of the disputes of fact.  "A plaintiff alleging spoliation must establish that the defendant *intentionally* destroyed the evidence for the purpose of depriving opposing parties of its use.  It is insufficient to show that a party acted negligently, rather than intentionally, in spoliating the evidence."  Coastal Bridge Co., L.L.C. v. Heatec, Inc., 833 F. App'x 565, 573 (5th Cir. 2020) (emphasis in original).  To obtain an adverse inference instruction at trial, Plaintiffs must establish three elements:  "(1) the party with control over the evidence had

---

[3] Stewart represents that photographs of the injuries "appear to show at least four bite areas: three areas on the leg (two below the knee and one above) and one to the thumb."  Record Document 47, p. 23.

[4] The claims against Officer McConnell will be addressed separately below.

an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Id. at 74.  Plaintiffs are not entitled to any adverse inference here. They freely concede that Corporal Lee never engaged his body cam; thus, he could not have destroyed what did not first exist.  Plaintiffs want this adverse inference based merely on the fact that Corporal Lee *should* have used his body cam, but under the law, they are entitled to no such inference.

III.   Unlawful Entry.

Smith alleges that Corporal Lee violated her Fourth Amendment rights by entering her home without her consent, without probable cause, and without a warrant.  As the Supreme Court has explained, "[i]t is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York, 445 U.S. 573, 586, 100 S. Ct. 1371 (1980).  Payton demonstrates that the Fourth Amendment's warrant requirement "has drawn a line at the entrance to the house." Id. at 589–90.  Any warrantless intrusion into someone's residence, even if only by "a fraction of an inch" violates the Fourth Amendment.  Kyllo v. United States, 533 U.S. 27, 37, 121 S. Ct. 2038 (2001).  A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or there is another exception to the warrant requirement that justifies the entry.  Voluntary consent is a specifically established exception to the Fourth Amendment's prohibition against warrantless searches.  Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041 (1973).

Defendants must show that consent was  (1) voluntarily given by (2) a person with actual or apparent authority and (3) the search did not exceed the scope of the consent.  United States v. Staggers, 961 F.3d 745, 757 (5th Cir. 2020).

A.      Corporal Barker's Entry of Smith's Residence.

The more significant entry issue debated by the parties is Corporal Lee's entry into the house with Dice, which is discussed below.  However, according to Smith, another entry occurred before that.  Smith asserts that Corporal Barker committed an unlawful entry into her house when he knocked on the door to speak with her, asked her to step outside to talk, and, according to Smith, stepped inside her house to prevent her from going back in, even to retrieve her shoes.

Defendants, on the other hand, argue Smith voluntarily accompanied Barker outside.  They further allege that Smith's story has changed throughout the course of litigation, and that she previously admitted to voluntarily accompanying the officers outside, such that this cannot be deemed a genuine dispute of material fact.  Citing the sham affidavit rule, Defendants ask the Court to refuse to consider Smith's statements that she was forced or coerced outside and that she was prevented from returning inside her house.  Under this doctrine, "a district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.' " Winzer, 916 F.3d at 472 (quoting Clark v. Resistoflex Co., A Div. of Unidynamics Corp., 854 F.2d 762, 766 (5th Cir. 1988)).  For an affidavit to be deemed a sham, it must directly contradict or be inherently inconsistent with prior testimony.  Id. The Fifth Circuit has cautioned that "not every discrepancy in an affidavit justifies a district

10

court's refusal to give credence to competent summary judgment evidence." Id. (citing Kennett-Murray v. Bone, 622 F.2d 887, 893 (5th Cir. 1980)).  Thus, a court "must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier statement. In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made earlier." Id. (internal citations and marks omitted).

Here, the inconsistencies identified by the Defendants are insufficient for the Court to conclude that Smith has directly contradicted her prior testimony or that her latter version of events is inherently inconsistent with her earlier version.  While this may create a credibility issue for Smith at trial, credibility determinations are for the jury, not for this Court, to resolve.  Because there is a genuine dispute of fact as to whether Corporal Barker committed an unlawful entry into Smith's home to prevent her from returning inside, and because the law was clearly established that an officer's unlawful entry into a residence is unconstitutional, qualified immunity is inappropriate.  This claim against Corporal Barker remains.

B.      Corporal Lee's Entry into Smith's Residence.

In this case, the more heavily contested issue is whether Corporal Lee had authority to enter Smith's home.  The Defendants concede they had no warrant to justify Corporal Lee and canine Dice's entry.  Instead, they contend that Smith consented to their entry. However, the Defendants freely acknowledge the dispute of fact on this point, that is, that Smith denies she ever gave consent for the officers to enter her home.  Nonetheless, the Defendants submit that summary judgment can be granted because the facts establish

Smith impliedly consented, thus resolving the question of whether they committed a constitutional violation. The Court disagrees.

"Consent to a search does not need to be explicit." Staggers, 961 F.3d at 757. However, without more, "[s]ilence or passivity cannot form the basis for consent to enter." Roe v. Texas Dep't of Protective & Regul. Servs., 299 F.3d 395, 402 (5th Cir. 2002).  The Fifth Circuit has "recognized that consent 'can be implied from silence or failure to object if it follows a police officer's explicit or implicit request for consent.' " United States v. Escamilla, 852 F.3d 474, 484 (5th Cir. 2017) (quoting United States v. Martinez, 410 F. App'x 759, 763 (5th Cir. 2011)).  Thus, consent can be "inferred from actions that reasonably communicate consent." Staggers, 961 F.3d at 757-58 (citing United States v. Lewis, 476 F.3d 369, 381 (5th Cir. 2007) ("The officers reasonably interpreted Caldwell's gesture as an invitation to enter the room.")).  Hence, in order for Smith's silence to constitute implied consent, it must have been preceded by a request—either explicit or implicit—for consent to enter and/or search Smith's residence.

Viewing this case in the light most favorable to the Plaintiffs, the Court must assume the truth of the following facts.  Officers arrived at Smith's house looking for Combs.  Smith told officers that Combs was not there and she did not know who he was.  Officers required Smith to leave her house and stand in the driveway.  The house was surrounded by law enforcement.  Smith knew the police were on the hunt for Combs, and she watched as they established and maintained a perimeter around her house.  Corporal Lee then went to the front door, entered the home, and released his police canine inside, while Smith

stood by in the driveway.  Crediting Smith's version of events, the officers did not seek consent to enter her home.

The Defendants argue that "[i]t should have been apparent to any person in Ms. Smith's situation, after being asked multiple times whether anyone was inside her home, that Cpl. Lee and/or other officers intended to enter her home, and at no time did Ms. Smith voice any objections or tell any officer on scene that they could not enter her home." Record Document 53, p. 7.  That is not sufficient to constitute implied consent, though. See United States v. Jaras, 86 F.3d 383, 390 (5th Cir. 1996) ("We do not think that consent may reasonably be implied from Jaras's silence or failure to object because Officer Mitchell did not expressly or impliedly ask for his consent to search.").  Under Smith's version of the facts, there was no explicit or implicit request for permission to enter, and thus there was no consent.  Compare United States v. Vega, 221 F.3d 789, 797 (5th Cir. 2000) (holding that a suspect did not consent when he lied about whether he lived in a house and failed to object to the subsequent search), with Martinez, 410 F. App'x at 763-64 (holding that active compliance with requests of law enforcement could be construed as implied consent), and United States v. Cooper, 43 F.3d 140, 148 (5th Cir. 1995) (finding "clear cooperation" when a defendant "produced his ticket when requested" and "stood up voluntarily prior to the pat-down").

In the instant case, the officers essentially want consent to exist where they decide on a course of action and the homeowner fails to stop them.  However, the act of remaining silent despite knowledge of what officers intend to do falls short of establishing one's consent.  Jaras, 86 F.3d at 390 (no consent found where the officer did not ask for

permission and the suspect did not grant permission but stood by as the officer searched); Cooper, 43 F.3d at 145 n.2 ("nonresistance may not be equated with consent.").  In this case, the Defendants cannot rely on a theory of implied consent, as implied consent must be preceded by an explicit or implicit request, which never occurred here.

Accordingly, Corporal Lee's entry into the home without a warrant and without consent—either explicit or implicit—constituted a violation of Smith's Fourth Amendment rights.  Corporal Lee is not entitled to qualified immunity for his actions, as the law was clearly established at the time of this incident that, in the absence of a warrant or an exception to the warrant requirement, he needed to obtain consent before entering a person's residence.  Summary judgment is denied as to this unlawful entry claim.

IV.   Excessive Force.

The Defendants next move for qualified immunity on Stewart's claim of excessive force based upon Dice's bite(s).  The Fourth Amendment provides the "right to be free from excessive force during a seizure."  Trammell v. Fruge, 868 F.3d 332, 340 (5th Cir. 2017) (quoting Poole, 691 F.3d at 627).  Under qualified immunity, this Court must consider whether, viewing the facts in the light most favorable to Stewart, Corporal Lee's actions violated Stewart's Fourth Amendment right to be free from excessive force.  If Stewart can establish the violation of his constitutional right to be free of excessive force, the Court will then analyze the second element of qualified immunity, which is whether the right was clearly established at the time of the alleged misconduct.

A.      Constitutional Violation.

To prevail on an excessive force claim and thereby establish a constitutional violation, Stewart must show "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." Ontiveros v. City of Rosenberg, 564 F.3d 379, 382 (5th Cir. 2009) (quoting Freeman, 483 F.3d at 416).  Because reasonableness is the "ultimate touchstone" of the Fourth Amendment, Brigham City v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943 (2006), excessiveness turns upon whether the degree of force used was reasonable in light of the totality of the circumstances facing the officer, Graham, 490 U.S. at 396.  Relevant factors include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.  "[O]fficers must assess not only the need for force, but also 'the relationship between the need and the amount of force used.' " Deville v. Marcantel, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999)).  The reasonableness of the officers' conduct cannot be judged with 20/20 hindsight, but rather must be assessed from the viewpoint of a reasonable officer on the scene at that very moment.  See Graham, 490 U.S. at 396. Indeed,

> [n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers . . . violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

Id. at 396-97 (internal citations and marks omitted).  "Excessive force claims are [thus] necessarily fact-intensive and depend[ ] on the facts and circumstances of each particular case."  Poole, 691 F.3d at 627–28 (internal citations and marks omitted).  The facts must be judged objectively "without regard to [the officer's] underlying intent or motivation."  Graham, 490 U.S. at 397.  As such, an officer's ill will or evil intentions are not determinative.  Id.

In the instant case, the Defendants do not seriously dispute that Stewart suffered an injury.  Nor, for that matter, do they dispute that Corporal Lee intended for Dice to bite whomever he encountered inside the house.  Record Document 53, pp. 7-8.  Rather, they contend that Corporal Lee's use of force was objectively reasonable under the law.  Said another way, the Defendants contend that it was not unreasonable for Corporal Lee to allow Dice into the home, knowing he would bite anyone he encountered, because "the use of a police dog to search a residence and apprehend suspects is a reasonable use of force despite the risk that some injury may occur."  Id. at 8.  Defendants attempt to characterize Dice's bite as accidental, not intentional, and as such claim there is no liability under Section 1983.

To be sure, a seizure must be willful, not accidental.  See Brower v. Cnty. of Inyo, 489 U.S. 593, 596, 109 S. Ct. 1378, 1381 (1989) ("[V]iolation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful.") (internal citations omitted).  However, the Court rejects the Defendants' characterization of this as an accidental biting.  While the evidence does not

show that Corporal Lee intended for Dice to bite Stewart, the undisputed evidence nonetheless establishes that Corporal Lee intended for Dice to bite any person he encountered inside Smith's house.  In other words, Corporal Lee intentionally deployed Dice with a command to find and bite.  Dice's actions, therefore, were not accidental, but rather were intentional bites deployed on *any* person, even the *wrong* person.  Dice was not intended to differentiate between Combs and any other innocent bystander.

As set forth above, the parties have presented a number of disputes of material fact about what happened on this date.  But taking the facts in the light most favorable to Stewart, this Court finds that a jury could conclude that the use of force was excessive and objectively unreasonable.  When construed in Stewart's favor, the facts are that without a warrant, without consent, and without any other legal justification, Corporal Lee entered Smith's home to search the house for Combs.  Corporal Lee released a police dog into Smith's home not knowing if anyone else was inside and he did so with the intent for the dog to bite whomever it encountered.  Smith did not know Stewart had returned to the home and could not warn officers that he was inside.  Stewart, an innocent elderly man, was in the bedroom asleep and/or with a television on and did not hear any warnings issued by Corporal Lee.  Upon hearing a commotion, Stewart left his bedroom and was attacked in the hallway by Dice.  Corporal Lee did not or could not get Dice to immediately release the bite, and Stewart suffered multiple bite wounds in an encounter that lasted at least one minute.

The Court considers the <u>Graham</u> factors of the severity of the crime at issue, whether Stewart posed an immediate threat to the safety of the officers or others, and

whether he was actively resisting arrest or attempting to evade arrest by flight. Application of these factors confirms that Corporal Lee's conduct was objectively unreasonable, as not a single factor weighs in favor of the application of force. First, Stewart was suspected of no crime whatsoever; indeed, he was an innocent bystander. Second, it is undisputed that Stewart posed no threat to the safety of the officers or others. As to the third factor of whether Stewart was actively resisting arrest or attempting to evade arrest, here again, there is no dispute—Stewart was neither resisting arrest nor attempting to evade an arrest. He was simply in the home in which police released a canine and was consequently attacked by the police dog. In sum, the Graham factors suggest that the use of force was excessive. Even if the initial use of force, i.e., the initial bite, could be deemed reasonable under a version of the facts more favorable to Defendants, Corporal Lee still acted unreasonably in allowing Dice to bite multiple times over an extended duration. See Cooper v. Brown, 844 F.3d 517, 524 (5th Cir. 2016) (prolonging the attack by allowing dog to continue attacking once arrestee is compliant is objectively unreasonable).

Furthermore, the Fifth Circuit has stressed that a relevant consideration in determining whether an officer's force was excessive to the need is the "speed with which an officer resorts to force . . . ." Trammell, 868 F.3d at 342. If he resorts to force quickly before employing other negotiation tactics or attempting "measured and ascending" responses commensurate with the plaintiff's conduct, then those circumstances militate against a finding of reasonableness. Id. There is a genuine dispute of fact as to whether Corporal Lee's warnings, if they were given, were sufficient to constitute proper negotiation tactics before sending in a police dog.

18

As set forth above, viewing the facts in the light most favorable to Stewart, the Court concludes that he has established injuries resulting directly and solely from force that was excessive to the need and objectively unreasonable under the circumstances.

B.      Clearly Established Law.

The Court next considers the second prong of the qualified immunity analysis, that is, whether Corporal Lee's actions were objectively reasonable in light of clearly established law at the time of the conduct in question.   The Court finds that the law was clearly established as of the events in this case in 2018 that an officer cannot commit an unauthorized entry into a private residence and then release a police dog on whomever happens to be inside.   "[A]lthough the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat," the degree of force that is allowed to be employed depends on the Graham factors.   Bush v. Strain, 513 F.3d 492, 502 (5th Cir. 2008) (internal quotation marks omitted).   It is clearly established law that an officer cannot violently strike an arrestee who has been subdued and is not resisting. See Ramirez v. Martinez, 716 F.3d 369, 379 (5th Cir. 2013); Bush, 513 F.3d at 502. Further, it is clearly established law that violently slamming or striking a suspect who is not actively resisting constitutes an excessive use of force.   Darden, 880 F.3d at 731 (holding that this right was clearly established as of 2013); Newman v. Guedry, 703 F.3d 757, 764 (5th Cir. 2012).   And, it is clearly established law that officers' disregard of the substantial risk of using force on innocent persons is a constitutional violation.   Grandstaff v. City of Borger, Tex., 767 F.2d 161, 167-68 (5th Cir. 1985).

It is also clearly established law that officers are required to "assess the relationship between the need and the amount of force used." Newman, 703 F.3d at 763 (quoting Deville, 567 F.3d at 167). In Deville, the Fifth Circuit held that a reasonable jury could find that the use of force was not justified when the officer failed to negotiate with the suspect but instead quickly resorted to breaking her car window and dragging her out of the vehicle. Deville, 567 F.3d at 168. Likewise, in Newman, the Fifth Circuit explained that it was objectively unreasonable for an officer to tase and strike the plaintiff arrestee with a nightstick without resorting to other less violent means when the arrestee's behavior could not be considered active resistance. Newman, 703 F.3d at 763.

The Court finds Cooper v. Brown to be particularly instructive, as it is a dog-bite case. There, the Fifth Circuit explained that the defendant officer had "fair warning" that his conduct was unreasonable even though the prevailing excessive force cases were not dog-bite cases. Cooper, 844 F.3d at 525. The court held that the law was clearly established that once an arrestee stops resisting, the degree of force an officer may use is reduced and that prior precedent had clearly established that slamming a compliant arrestee's face into a vehicle or tasing an arrestee who is not a threat to the officers is objectively unreasonable. Id. at 524. The court instructed that even though its prior cases may not have been dog-bite cases, that fact

> does not shield [the officer]. Lawfulness of force . . . does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel. Thus, [the officer] had "fair warning" that subjecting a compliant and non-threatening arrestee to a lengthy dog attack was objectively unreasonable.

Id. at 525 (quoting Newman, 703 F.3d at 763); see also Malone v. City of Fort Worth, Tex., No. 4:09-CV-634-Y, 2014 WL 5781001, at *15 (N.D. Tex. Nov. 6, 2014) (release of a police dog, without warning and on a compliant, non-threatening suspect, is objectively unreasonable under clearly established law); Stranjac v. Jenkins, No. 10–829, 2012 WL 3862377, at *11 (M.D. La. Sep. 5, 2012) (even in the "absence of Fifth Circuit case law specifically addressing excessive force allegations in a dog-bite case, no reasonable police officer could conclude that the use of a police dog is permissible when employed, without warning, against a secured non-threatening suspect."); Calton v. City of Garland, No. 3:02-CV-2215, 2004 WL 2965005, *2 (N.D. Tex. Dec. 10, 2004) ("Viewing the facts in the light most favorable to Calton, the officer's release of a police dog on a suspect of a misdemeanor traffic offense who is making no threatening actions and is not actively resisting at the time of the release was objectively unreasonable."); but see Shumpert v. City of Tupelo, 905 F.3d 310, 321 (5th Cir. 2018) (before the 2016 opinion in Cooper, "neither the United States Supreme Court nor this court had addressed what constitutes reasonable use of K9 force during an arrest.").

Here, the Court finds that "it would be clear to a reasonable officer that his conduct was unlawful in the situation" Corporal Lee confronted. Shumpert, 905 F.3d at 321. Because using a police canine to apply force to someone who is not actively resisting, much less to an innocent bystander, is in violation of clearly established law, Corporal Lee is not entitled to qualified immunity on Stewart's excessive force claim. Summary judgment is thus inappropriate.

V.      Municipal Liability.

Stewart has brought a claim against the City of Shreveport for municipal liability for its alleged failure to properly train Corporal Lee and Dice.  A municipality cannot be held liable for the actions of its employees under the traditional respondeat superior theory. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978). However, a municipality may be sued if it is "alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by officers of the municipality.  City of St. Louis v. Praprotnik, 485 U.S. 112, 121, 108 S. Ct. 915 (1988).

Municipal liability under Section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).  An "official policy" can be evidenced through "duly promulgated policy statements, ordinances or regulations," or by a custom that is such a persistent and widespread practice that, although not officially promulgated, it fairly represents a municipal policy. Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984); see also Zarnow v. City of Wichita Falls, Tex., 614 F.3d 161, 168–69 (5th Cir. 2010). To establish the "moving force" requirement, a plaintiff must show that the municipality's policy or custom that caused the alleged harm was either unconstitutional or "promulgated with deliberate indifference."  Piotrowski, 237 F.3d at 578.   Where a policy is facially constitutional, a plaintiff must demonstrate that the policy was promulgated with deliberate indifference that a known or obvious unconstitutional consequence would

22

result. Id. at 579.  Deliberate indifference is more than "mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight."  Shumpert, 905 F.3d at 316.

Stewart alleges that the City of Shreveport is liable for failing to train Corporal Lee and Dice.  "The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes an injury." Id. at 317.  In this case, Stewart alleges the City of Shreveport failed to provide: maintenance training in accordance with the U.S. Canine Industry Standard; training where innocent bystanders are present; training in the find and bark method which is less excessive than the find and bite procedure; and training that would have forced Dice to release Stewart immediately rather than having to resort to a choke hold. Defendants argue summary judgment is warranted on this claim, as Stewart challenges the actions of Corporal Lee and Dice rather than the City's training program itself. Defendants note that Stewart has not identified any evidence showing the City's training program is inadequate, nor has he established a pattern of similar violations that would have alerted the City to the fact that its training program was deficient.  Additionally, Defendants point out that Stewart's identification of ways in which Corporal Lee and Dice could have received better or additional training is insufficient to support liability.

In a failure to train claim, "the focus must be on adequacy of the training program in relation to the tasks the particular officer must perform."  Shumpert, 905 F.3d at 317. To establish a failure to train claim giving rise to municipal liability under Section 1983, a plaintiff must demonstrate: (1) inadequate training procedures; (2) the inadequate

training caused a violation of the plaintiff's constitutional rights; and (3) the deliberate indifference of municipal policymakers. Pineda v. City of Houston, 291 F.3d 325, 331–32 (5th Cir. 2002).  For purposes of this Monell claim, the Plaintiff must present evidence that the City had a policy or custom of failing to train canines and canine handlers such that their conduct would result in the deprivation of constitutional rights. See Mason v. City of Lafayette, 2013 WL 6493606 at *10 (W.D. La. Dec. 10, 2013) (noting for purposes of a Monell claim that the plaintiff presented "no evidence that LCG had a policy or custom of using canines in a manner that would cause a person, like Mason, to suffer a deprivation of his constitution[al] rights.").

Deliberate indifference requires actual or constructive notice that a particular omission in a training program causes city employees to violate citizens' constitutional rights, yet the municipality nevertheless chooses to retain that program. Connick v. Thompson, 563 U.S. 51, 61, 131 S. Ct. 1350 (2011).  As the Fifth Circuit has explained, a plaintiff's evidence must be more than "a mere 'but for' coupling of cause and effect.  The deficiency in training must be the actual cause of the constitutional violation." Shumpert, 905 F.3d at 317.  A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference. Id. "Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Id.

Here, Stewart has not offered sufficient or specific facts regarding the City of Shreveport's actual training procedures for its canine unit, how those procedures were

deficient, or how those alleged deficiencies were the moving force behind this particular constitutional violation.   Moreover, Stewart has offered no evidence regarding prior incidents similar to those that occurred in this case.[5]  Without a pattern of constitutional violations or some other indication of the City's knowledge of the training deficiencies, Stewart cannot demonstrate that the City of Shreveport acted with deliberate indifference. See Thompson v. Upshur Cnty., Tex., 245 F.3d 447, 459 (5th Cir. 2001) ("Proof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference.").  Stewart's conclusory allegations that his injuries could have been avoided through better training are insufficient to carry his burden.  See Shumpert, 905 F.3d at 318 ("mere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability.") (internal marks omitted).  Accordingly, summary judgment is proper, and Stewart's failure to train claim is dismissed.

---

[5] As evidence of this claim, Stewart cites to one incident involving Corporal Lee and Dice where Dice accidentally bit someone.  However, Corporal Lee's supervisor's report of that incident is dated November 30, 2018, and thus cannot serve as a *prior* incident such that the City was put on notice.  See Record Document 49-9, p. 1.  The report also includes concerns related to Corporal Lee's performance as a canine handler. The issue is not whether Corporal Lee is an overall satisfactory fit within the canine unit; the issue is whether the City failed to train him in how to deploy his canine to apprehend a subject.  Thus, the concerns relating to Lee's failure to enter a building ahead of other officers, treating his canine more as a pet than as a police dog, having one of his dogs bite teddy bears and pillows, inability to take "functional authority" of the scene, and failure to engage his recording equipment, are not relevant training violations or policies as it relates to the instant case.  None of those actions inform the inquiry of whether the City failed to provide proper training to Corporal Lee as to when to deploy his canine under similar conditions; none of those concerns relate to accidental bites; and none of those concerns suggest problems of a constitutional nature.

VI.   <u>Claims Against Officer McConnell</u>.

Plaintiffs' complaint avers that Officer McConnell acted with Corporal Lee in "forcing" Smith from her home, that Officer McConnell then entered the home without permission, and that he searched the home.  In response to the Defendants' motion for summary judgment, Plaintiffs allege that Officer McConnell was outside the Smith home watching the windows in case Combs tried to escape.  Nonetheless, Plaintiffs admit that Officer McConnell neither entered Smith's house, nor did he have any interactions with Smith or Stewart, meaning he personally did not commit an unlawful entry or use excessive force.  <u>See</u> Record Documents 44-2, p. 4 & 47-1, p. 10.  Rather, Plaintiffs argue merely that Officer McConnell is liable because he "could have intervened to stop the use of force and/or the illegal entry.  There is substantial evidence that Lee, Barker and McConnell contributed to the injury to Mr. Stewart" or that "McConnell . . . could have voiced an objection" to the illegal entry.  Record Document 47, p. 32.  Assuming the Plaintiffs are attempting to pursue a claim of bystander liability against Officer McConnell, their allegations are entirely conclusory and fail to satisfy their burden at the summary judgment phase.

"Bystander liability" attaches when "the officer '(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act.' " <u>Whitley v. Hanna</u>, 726 F.3d 631, 646 (5th Cir. 2013) (quoting <u>Randall v. Prince George's Cnty., Md.</u>, 302 F.3d 188, 204 (4th Cir. 2002)). "The rationale underlying the bystander liability theory is that a bystanding officer, by

26

choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer." Id. at 647; see Hale v. Townley, 45 F.3d 914, 919 (5th Cir. 1995) ("an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983" under a theory of bystander liability). To the extent Plaintiffs seek to impose bystander liability on Officer McConnell for Stewart's excessive force claim, that fails as a matter of law.  It is undisputed that Officer McConnell was not in the presence of Corporal Lee and Dice when Dice bit Stewart.  Officer McConnell must have been present inside the house at the scene of the attack to be liable for failing to intervene in the application of force.  See Whitley, 726 F.3d at 647 (where officer is not present at scene of events, he is not within the scope of a bystander liability claim).  Thus, this claim must be dismissed.

As to bystander liability for Corporal Lee's unlawful entry of Smith's house, this claim must also be dismissed.  Plaintiffs have pointed to no evidence to create a genuine dispute of material fact regarding whether Officer McConnell knew there was a constitutional violation, that is, that Officer McConnell knew Smith had not provided either verbal or implied consent for Corporal Lee to enter the house.  Plaintiffs cite Officer McConnell's deposition where he stated that he did not recall an officer requesting consent to enter, however, Officer McConnell's deposition testimony clearly states that he "didn't hear exactly what they were saying" at the front door, nor did he know if officers had obtained a search warrant for the house.  Record Document 48-4, p. 19.  There were many officers on the scene, and the undisputed facts show that the officers switched positions around the perimeter.  Officer McConnell was neither at the front door, nor at

the rear of the house, nor in the driveway with Smith; instead, he was stationed on the northwest corner of the house in case Combs tried to escape through a window.  Plaintiffs are unable to create a genuine dispute of fact regarding Officer McConnell's knowledge that Corporal Lee did not have consent to enter the home, and as such, the bystander liability claim cannot survive. All claims against Officer McConnell are dismissed with prejudice.

VII.    <u>State Law Claims</u>.

Plaintiffs allege state law claims of trespass, battery, negligence, and strict liability. Under their negligence theory, Plaintiffs include Dice's use of force and the City's failure to train Corporal Lee.  Defendants seek the dismissal of all state law claims, but as to the trespass, battery, and failure to train claims, they argue merely that the claims should be dismissed for the same reasons that the federal claims should be dismissed.  However, Defendants concede that any analysis on these particular claims is analogous to the preceding analysis on the federal claims.  Accordingly, because the Court has determined that summary judgment is unwarranted on the Section 1983 claims stemming from unlawful entry and excessive force, it likewise finds the analogous state law claims must survive summary judgment.

As to failure to train, however, the Court finds the claim should be dismissed.  In Louisiana, employers owe a due to exercise reasonable care in the training of their employees.  Roberts v. Benoit, 605 So. 2d 1032, 1040 (La. 1991).  Thus, "an employer's liability for the negligent hiring, training and supervision of its employees . . . is based upon the independent or direct negligence of the employer and its duty to exercise

28

reasonable care in hiring, training and supervising its employees . . . ."  Pelitire v. Rinker, 18-501 (La. App. 5 Cir. 4/17/19); 270 So. 3d 817, 834.  A claim for negligent training is "governed by the same duty-risk analysis used for all negligence cases in Louisiana.  That is, in order to recover against an employer for its own negligence, the plaintiff bears the burden of proving each of five separate elements: duty, breach of duty, cause-in-fact, scope of liability or scope of protection, and damages."  Id. at 837.

As discussed above, the Plaintiffs have failed to establish any causal connection between the City of Shreveport's canine training program and Corporal Lee's subsequent actions. Indeed, Plaintiffs only identify wrongs allegedly committed by Corporal Lee on the day of the events giving rise to this suit, but they have presented no evidence whatsoever to establish that the City's training program for its canine unit was deficient and that those deficiencies led to or caused the constitutional violations that happened here.  Because Plaintiffs have failed to satisfy their burden of proof, the state law negligence claim for failure to train is dismissed.

The only state law claim the Defendants independently address is the Plaintiffs' strict liability claim based on Dice's dog bite.  With respect to that claim, the Plaintiffs allege that the City of Shreveport is strictly liable for the damage inflicted by Dice, pursuant to Louisiana Civil Code article 2321.  This article provides:

> The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which

29

the owner could have prevented and which did not result from the injured
person's provocation of the dog.

La. Civ. Code art. 2321.  Defendants seek to dismiss this claim, but they do not devote
much attention to the issue.  Their primary argument is that "there is no authority
whatsoever that grants Plaintiffs a claim separate and apart" from the other claims they
have pursued.  Record Document 44-1, p. 30.  The Court is unsure how to interpret this
remark.  Do the Defendants believe the Plaintiffs cannot simultaneously pursue a Section
1983 excessive force claim and a strict liability claim for the same dog bite, or alternatively,
do the Defendants believe that police canines are not subject to strict liability under this
codal provision?

As to the latter, the Court has located a Louisiana appellate decision which, at the
very least, confirms that law enforcement canines are governed under this provision if
they bite another person.  See Bradley v. Hall, 2015-1297 (La. App. 1 Cir. 2/24/16); 2016
WL 759160.  The Court acknowledges that the facts of Bradley may make the case
distinguishable, in that there was no allegation of a deprivation of rights under color of
law.  However, again, Defendants have not directed the Court to any authority for their
conclusory statement that Plaintiffs cannot pursue a strict liability claim, and the Court has
located no authority to corroborate the Defendants' contention.  Thus, the Court will not
dismiss on this basis.

The Defendants' alternative argument is that this claim is unavailable to the
Plaintiffs because they cannot establish that the "owner could have prevented the injury."
However, this determination is dependent upon facts which are currently in dispute.  Thus,
the Court cannot resolve this claim on summary judgment.

If Defendants wish for the Court to reconsider the legal aspect of this issue prior to trial—whether this claim is unavailable to the Plaintiffs as a matter of law—, they may file an additional brief, supported by authority, by **May 6, 2022**.  Plaintiffs' response will be due by **May 13, 2022**. No reply will be permitted.

## **CONCLUSION**

For the foregoing reasons, the Defendants' motion for summary judgment [Record Document 44] be and is hereby granted in part and denied in part.  It is granted to the extent that the failure to train claim against the City of Shreveport and all claims against Officer McConnell are **dismissed with prejudice**.  The Defendants' motion is denied in all other respects.

**THUS DONE AND SIGNED** this 22nd day of April, 2022.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE