**MINUTES [2:40]**
**April 4, 2024**

**JUDGE ELIZABETH ERNY FOOTE**
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

---

| | |
|---|---|
| JUANITA SMITH, ET AL. | CIVIL ACTION NO. 19-1261 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| JC LEE, ET AL. | MAG. JUDGE KAYLA D. MCCLUSKY |

---

The Court held a zoom pretrial conference on April 4, 2024, in the above-captioned matter. Nelson Cameron participated on behalf of the Plaintiffs, Juanita Smith and Floyd Stewart. Nichole Buckle participated on behalf of the Defendants, Corporal JC Lee, Corporal Derek Barker, and the City of Shreveport. Robin McCoy is the law clerk assigned to this matter, and any further questions relating to this trial should be directed to her.

I.   Trial Schedule and Logistics.

Jury trial in this matter is set for **April 29, 2024**, at **9:00 a.m.** This matter is a first setting on the Court's docket. In accordance with Local Rule 16.4, counsel shall inform the Court immediately if settlement is reached.

The Court has allocated four days for this jury trial, based on the amount of time counsel suggested trial would last. From the Court's experience, this allows approximately 16 ½ hours for testimony. The Court allocated 8 hours and 45 minutes to the Plaintiffs for their case-in-chief, cross-examination, and rebuttal case, while Defendants will have 7 hours and 45 minutes to present their case-in-chief and conduct cross-examinations.

1

Mr. Cameron responded that he did not believe he could present his case in the allotted time, although he agreed that he had told the Court trial would last four days. The Court offered to continue the trial to a week on the docket where more trial days could be accommodated. Plaintiffs' counsel declined the Court's offer and selected to proceed to trial as scheduled, within the prescribed time constraints.

Counsel should be prepared to present their respective cases within the time allotted. These fixed time periods do not include opening/closing statements, voir dire, or the charging of the jury. The courtroom deputy will time each portion of counsel's presentation and subtract the amount of time used from the total amount of time allotted to that side. At the end of each day of trial, the courtroom deputy will tell counsel how much of their time remains. At any time, counsel may ask the courtroom deputy how much of the time allotted to them remains. Time continues to run for objections unless an objection requires a sidebar or a recess. Plaintiffs should be prepared to begin testimony on the first day of trial, and all counsel should be prepared with sufficient witness testimony to fill each day of trial.

A.  Jury Selection.

On the first morning of trial, the parties shall provide the courtroom deputy with a complete witness list to be read to the jury venire. The Court will conduct the initial voir dire. Counsel may submit questions for the Court to ask if they so desire; submissions to the Court must be made by **April 17, 2024**. At the conclusion of the general voir dire, the Court will hold a brief sidebar to discuss any additional questions which may need to be asked by the Court. In addition, each side will be allowed fifteen minutes to conduct

voir dire, during which time counsel may address potential jurors individually or as a group. In accordance with 28 U.S.C. § 1870, each side shall receive three peremptory strikes, which shall be written and exercised simultaneously after the Court has ruled on all challenges for cause. Twelve jurors will serve in this case.

B.   Daily Schedule.

Counsel will be allowed thirty minutes for opening statements. The Court will determine the length of closing arguments during trial. Court will begin at 9:00 a.m. and generally conclude by 5:00 p.m. Counsel should arrive in the courtroom at least 30 minutes prior to trial on each day of trial. On one of the evenings following trial, counsel should anticipate discussing jury instructions. If a party chooses to participate, the charge conference will be held in the courtroom; otherwise, it will be held in chambers.

C.   Exhibits.

The Court reminded the parties that, for paper exhibits, only individual pages that have been published to the jury in open court will be admitted into evidence and allowed into the jury room during deliberations. The Court also requires that these pages be published in connection with witness testimony unless previous permission has been obtained from the Court. The purpose of this rule is to ensure that the jury does not base its verdict on exhibits whose relevance has not been established. This rule does not apply to contracts for liability insurance.

Exhibits may be published to the jury electronically by counsel from the podium or by an assistant from the counsel table. If counsel prefers to use paper copies of exhibits,

3

these may be displayed to the jury by counsel from the podium using the courtroom's projection equipment.

Before the jury retires to deliberate, counsel must provide the courtroom deputy with a single binder containing only those exhibits that were published to the jury and admitted into evidence by the Court. The exhibits should be separated by tabs. This will constitute the set of documents that the jury will use in its deliberations.

In order to preserve the record for appellate review, a CD-ROM containing pdf-format versions of the exhibits that were introduced at trial must be provided to the courtroom deputy at the close of trial. The parties must also submit an exhibit list reflecting only those exhibits introduced at trial in Word format to the courtroom deputy.

II.     Remaining Claims/Defenses.

The Court identified the following claims as the only ones remaining for trial: (1) a claim under 42 U.S.C. § 1983 regarding the allegedly unlawful entry into Smith's home by Barker and Lee; (2) a negligence claim under Louisiana Civil Code article 2315 against Barker for his unlawful entry into Smith's home; (3) a negligence claim under Louisiana Civil Code article 2315 regarding Lee's unlawful entry into Smith's home; (4) a negligence claim under Louisiana Civil Code article 2315 against the City of Shreveport regarding Lee's use of the canine on Stewart; (5) battery (subject to the discussion below); and (6) a strict liability claim against the City of Shreveport under Louisiana Civil Code article 2321 for the dog bite. Plaintiffs originally alleged a trespass claim in this matter, but that claim has not been pursued and is deemed abandoned. Plaintiffs did not object to the dismissal of this claim.

Mrs. Buckle argued that the battery claim and the negligence claim against the City are the same and should not be treated as two distinct claims. In her view, these should be grouped together in one jury instruction. She explained that a finding of negligence (for the intentional use of force) also constitutes a finding of battery; she further submitted that she could not locate a case that treated the two as separate claims. The Court requests briefing by both parties on this issue by **April 17, 2024**. The briefing should address whether Plaintiffs' battery claim is subsumed by the negligence claim.

The following defenses are maintained for trial: (1) qualified immunity (subject to the discussion below); (2) comparative fault; (3) limitation of liability, per Louisiana Revised Statute 13:1506; and (4) public official/employee immunity, per Louisiana Revised Statute 9:2798.1. Further, if the Defendants are the prevailing party, they seek attorneys' fees and costs pursuant to 42 U.S.C. § 1988. The parties agreed that the issue of attorneys' fees and costs could be handled separately after the jury reaches a verdict.

As to qualified immunity, the Court asked whether this was still a viable defense after the Fifth Circuit rendered its opinion in this matter. Mrs. Buckle argued that the Fifth Circuit decided the "clearly established" element of qualified immunity but did not decide on reasonableness. The Court disagrees and believes that if the jury finds, as a matter of fact, that there was no consent to enter the residence, then the entry was unreasonable, and the law is clearly established. Mrs. Buckle argued, and the Court agreed, that the jury will make independent determinations for Lee and Barker, as different facts inform the issue of each officer's entry. Thus, on the verdict form, the jury will need to make a decision as to each Defendant's entry. Mr. Nelson disagreed with

5

the Defendants and the Court on this point and argued that there is not a different set of facts for Lee and Barker. In Plaintiffs' view, if there was no consent, neither could enter. The Court pointed out that argument is contrary to the Fifth Circuit's opinion and thus declined to adopt the Plaintiffs' position. Plaintiffs also argued that if there was no consent to enter, then the matter of qualified immunity is foreclosed. By **April 17, 2024**, the parties must brief the Court on the issue of what specifically is foreclosed by the Fifth Circuit's opinion and the basis for that proposition.

III.   Pending Motions.

   A.   *Daubert* Motion [Record Document 86].

The Defendants sought to exclude portions of the opinion testimony likely to be offered by the Plaintiffs' use of force expert, Ernest Burwell. As the Court began to orally rule on the admissibility of certain statements contained in Burwell's report, it learned that Plaintiffs' counsel has been unable to contact Burwell regarding testifying at trial. The Court was alarmed by this news for a number of reasons. First and foremost, prior to the pretrial conference, the Court expended time and resources reviewing the *Daubert* motion and specifically, the Defendants' objections to certain areas of testimony that are anticipated to arise through live testimony at trial. The Plaintiffs never alerted the Court that Burwell may not appear live, nor did either party mention Burwell's deposition and/or ask for a ruling on the admissibility of that deposition. Second, as the Court learned, the Defendants took a discovery deposition of Burwell. He has not been deposed for purposes of trial. If the Court were even to allow his discovery deposition to be used at trial based on the unavailability of the witness (which is the Plaintiffs' burden to

6

demonstrate), it would need to rule line by line on the admissible testimony. Again, neither party asked the Court to do this. Accordingly, the Court ordered Plaintiffs to identify which portions of Burwell's deposition they seek to use by **April 10, 2024**. Then, by **April 17, 2024**, the Defendants must identify objectionable portions and/or omissions of opposing counsel's excerpted deposition testimony and note objections in the margin. This must be submitted to the Court by **April 17, 2024** for its review.

In the event Burwell testifies at trial, the Court proceeded to rule on the admissibility of certain portions of his testimony. The Defendants' *Daubert* motion focused on thirteen statements in Burwell's report that it sought to exclude. Some of these were paragraphs that contained a number of statements, and for that reason, the Court broke each down further into sub-parts. The reasons for the Court's ruling on each statement were explained on the record and are summarized below.

1. (a) "*The Shreveport Police Department violated Smith and Stewart's Fourth Amendment rights.*" **RULING: INADMISSIBLE**.

   (b) "*Smith was made to leave her home and Stewart was seized by force.*" **RULING: INADMISSIBLE**.

   (c) "*I was not able to find any audio or video where any officer spoke with Ms. Smith prior to the canine search of her residence where she gave consent to go in her home.*" **RULING: ADMISSIBLE**.

   (d) "*In fact, Lee had been talked to by his supervisor on numerous occasions about failing to activate his camera.*" **RULING: DEFERRED**. If this is a reference to Sergeant Sawyer's report, then the report itself is hearsay. If Sawyer testifies and the facts are introduced through him, Burwell can rely on the admissible testimony to render his opinion.

2. "*Sgt. Sawyer wrote that 'as canine handlers we need to be able to go to a call and take functional authority of the scene as it pertains to working the police service dog. Lee is unable to do this and looks to other officers to lead the scene even when deploying his police K-9.' Sgt. Sawyer also wrote*

7

*that Officer Lee had trouble for most of Officer Lee's time as a canine handler."* **RULING: DEFERRED**. If this is a reference to Sergeant Sawyer's report, then the report itself is hearsay. If Sawyer testifies and the facts are introduced through him, Burwell can rely on the admissible testimony to render his opinion.

*"However, Officer Barker already violated her 4th amendment constitutional rights when he entered her home and made her leave. Lee relied on other officers to dictate the search. Barker never told Lee he received consent to go in Smith's house."* **RULING: INADMISSIBLE** as to the legal conclusion. Any facts relied upon by Burwell must first be introduced through admissible evidence.

3. *"Officer Barker entered Smith's home, prevented her from closing the door, made her leave, and never got consent to be inside her home. Officer Barker does not remember this during his deposition."* **RULING: INADMISSIBLE** as to the legal conclusion of consent. Any facts relied upon by Burwell must first be introduced through admissible evidence.

4. *"The Shreveport Police Department and Officer Lee did not use the standards of care established over thirty years [a]go for making canine announcements. Best practices involve the canine handler using the P.A. system on the patrol vehicle, pointed at the target location, and clearly making canine announcements. The announcements could easily be repeated for at least five minutes. Another standard of care would be to make phone calls into the location."* **RULING: ADMISSIBLE**.

5. (a) *"When conducting a search such as this, Officer Lee was required to keep visual of his dog at all times, SPD 606.12. This requires the handler to be able to quickly recall the dog using voice commands."* **RULING: ADMISSIBLE**. Burwell can testify to the standard in place at the time of the event and may testify as to what is required of the canine handler.

(b) *"In this incident the dog was on leash and officer Lee still lost sight of the dog which allowed the dog to bit[e] Mr. Stewart many times."* **RULING: ADMISSIBLE** so long as the facts relied upon by Burwell have already been introduced at trial through admissible evidence.

(c) *"The whole concept of the leash is to keep the dog in sight and the officer control where the dog goes, not the dog going where it wants. The proper knowledge and leash skills require daily training. When using a leash, the handler can feel when the dog gets scent and begin to pulls [sic] harder on the leash. The handler would know that there is someone nearby."* **RULING: ADMISSIBLE**.

8

    (d) "*Officer Lee has had several accidental bites with the dog on leash. See Sgt. Sawyer's internal memo. On one occasion the dog reached out and bit a person on the couch while on leash.*" **RULING: DEFERRED**. If this is a reference to Sergeant Sawyer's report, then the report itself is hearsay. If Sawyer testifies and the facts are introduced through him, Burwell can rely on the admissible testimony to render his opinion.

6. "*Police dog Dice should not have been working in patrol. The handler does not have control verbally or manually of the dog. In order for a police dog to be certified to work patrol, the dog must annually pass that it can release a bit[e] on one verbal command.*" **RULING: ADMISSIBLE**.

7. *Canine Team Qualifications for the canine team requires the team to demonstrate certain specified skills and abilities to the canine supervisor on a periodic basis as prescribed in departmental regulations. Failure to participate in or qualify under established training standards will result in de-certification of the team. The team may not be deployed unless re-certified. This canine team is not able to perform in the field as required, to release a bite on verbal command. The dog would not release on command and Lee had to apply pressure to the dog's neck (choke) to get it to release.*" **RULING: ADMISSIBLE**.

8. "*Officer Lee failed to gather the required information prior to going into Ms. Smith's home.*" **RULING: INADMISSIBLE** absent further explanation and/or context.

9. "*Officer Lee attacked Ms. Smith's credibility and accused her of being 'nuts.' Ms. Smith was under the impression that the officers were looking for a certain person named Combs. S[h]e told them no one was in there, referring to Combs. The Officer's [sic] should have understood this is how certain people talk when excited by police presence and questioning. I have extensive experience working with South Central Los Angeles and dealing with the black community and how they express themselves. Without a doubt, Ms. Smith was telling the officer's [sic] that there was nobody in her house who they were looking for.*" **RULING: INADMISSIBLE**.

10. "*The Shreveport Police Department knew that Officer Lee did not have the skills required to be a competent canine handler prior to this incident.*" **RULING: ADMISSIBLE**

11. "*The canine position requires great skills such as being a good detective to obtain proper information prior to conducting a search. The handler must*

9

*have excellent communication skills to be able to talk to citizens and not belittle them.*" **OBJECTION WITHDRAWN**.

12. "*Canine Officer Lee did not possess those skills and caused an elderly man to be severely bitten multiple times by his police dog.*" **RULING: ADMISSIBLE** depending upon whether the facts relied upon by Burwell have already been introduced at trial through admissible evidence.

13. "*The Shreveport Police Department uses the International Chiefs of Police policy and papers dated May, 2015. Officer Lee failed to follow those policies and guidelines regarding the deployment, report writing, control of the dog, and investigative skills to prevent a resident from being attacked. The department also failed to supervise, train, and discipline Officer Lee since they knew Officer Lee was incompetent as a canine handler. Instead, Officer Lee remained working in the field and had several unauthorized bites resulting in force that was not reasonable.*" **RULING: ADMISSIBLE** as to knowledge and **INADMISSIBLE** as to failure to train because the failure to train claim has been dismissed.

B. <u>Defendants' Motion in Limine [Record Document 102]</u>.

The Defendants moved to exclude certain of Plaintiffs' exhibits. The Court ruled as follows:

1. <u>Exhibit 4</u>: a 2-page letter summarizing a pre-disciplinary conference and issuing a letter of reprimand regarding an April 2013 vehicle pursuit. **RULING: SUSTAINED**.

2. <u>Exhibit 5</u>: a 1-page letter scheduling a pre-disciplinary conference regarding an incident in which Lee failed to make a missing person's report and failed to activate his MVS. **RULING: SUSTAINED**.

3. <u>Exhibit 6</u>: a 1-page letter notifying Lee that a pre-disciplinary conference is scheduled regarding a vehicle pursuit in April 2013. **RULING: SUSTAINED**.

4. <u>Exhibit 23</u>: IOC memo from Sawyer regarding Lee and his camera and report issues; this memo was issued on October 4, 2018, after the dog bite in this case. **RULING: SUSTAINED IN PART**. The document itself is hearsay. Sawyer can testify to the facts (events and/or issues with Lee) within his personal knowledge as Lee's supervisor in the canine unit. The report may come in to refresh Sawyer's memory but cannot be introduced into evidence.

10

5. <u>Exhibit 24</u>: IOC memo from Sawyer on November 30, 2018, regarding Lee and Dice engaging in another accidental dog bite. **RULING: ADMISSIBLE** depending upon whether Plaintiffs can satisfy hearsay rules. Sawyer can testify to these bites based on the close temporal proximity. Defendants can submit a limiting instruction as to the relevance of the incident.

C. <u>Plaintiffs' Motion in Limine [Record Document 104]</u>.

The Plaintiffs moved to exclude certain of Defendants' exhibits and/or anticipated portions of testimony. The Court ruled as follows:

1. <u>Exhibit 1</u>: recording of radio dispatcher and officers speaking about the location and previous day's activities. **RULING: OVERRULED**. The recording can be played, as it explains why the police were on State Street and what they were doing. It is not hearsay, as it is not being admitted for the truth of the matter. The Court will instruct the jury that this recording is not being introduced for the truth but to explain why the police were at Smith's residence. The Plaintiffs can cross-examine McConnell on his lack of personal knowledge.

2. <u>Exhibit 2</u>: recording of police personnel talking about a tip concerning the whereabouts of Combs. **RULING: OVERRULED** for the same reasons as stated above for Exhibit 1.

3. Testimony that Smith did not object to the officers entering without permission or consent. **OVERRULED in part, SUSTAINED in part**. The officers can testify to facts surrounding the issue of consent; they may say "I believe she consented." Officers cannot opine on or reach a legal conclusion that there was implied consent. Plaintiffs can cross-examine and impeach the witness with other statements, if appropriate.

4. Testimony that Stewart must have heard the officers knocking or giving warnings. Plaintiffs represent this is captured on a recording. **RULING: SUSTAINED**. If the recording on which this statement is captured is otherwise admissible, it can be played, but the parties cannot play any portion of the recording that reveals an officers' opinion that the Plaintiffs did/did not hear Defendants' warnings. Mrs. Buckle indicated that the video could not be redacted. Instead, the parties shall agree as to the relevant portion of the video that should be shown at trial.

5. Evidence of Stewart's felony conviction when he was a juvenile. **RULING**:

11

**SUSTAINED**.

6. Implication that Stewart is litigious. **RULING: SUSTAINED**.

7. Opinion testimony from defense witnesses that the Defendants did not violate the Constitution, did not violate any of Plaintiffs' rights, acted reasonably, and/or had consent to enter. **RULING: SUSTAINED**. Officers cannot testify as to legal conclusions. However, they may testify as to whether they believed they had consent to enter.

IV. Exhibits.

During the conference, the Court addressed the parties' joint exhibits and ruled on the parties' objections to exhibits, as set forth below, to the extent objections remained after the ruling on the competing motions-in-limine.

As to the parties' joint exhibits, one exhibit is MVS Body Cam video disc 2 of 3; as to this exhibit, the parties are **ORDERED** to discuss, by phone or in person, the duration of the video that should be introduced at trial. If they cannot agree, they should notify the Court by **April 15, 2024**.

A. Defendants' Objections to Plaintiffs' Exhibits.

1. Exhibit 9: Objection withdrawn.

2. Exhibit 10: Objection withdrawn.

3. Exhibit 11: Sustained due to lack of relevance. If the Plaintiffs determine independent relevance of the evidence, they can ask for a conference outside the presence of the jury and move to reconsider the ruling.

4. Exhibit 13: No objection, but the Plaintiffs titled this exhibit incorrectly. It is the Travis Diagram, not the Lee Diagram.

5. Exhibit 15: Deferred. The Court orders both parties to brief the Court by

12

**April 17, 2024**, on the following questions related to this exhibit: (a) what is the purpose/import of the certification; (b) how would Plaintiffs introduce this; and (c) is this relevant to the state law claims?

6. Exhibit 17: Objection withdrawn.

7. Exhibit 31: Objection withdrawn, although Plaintiffs are cautioned that the Court's rule is that lengthy/voluminous records cannot be introduced to the jury without showing the independent relevance of each page. If the Plaintiffs' witness can establish relevance, the Court will allow these.

8. Exhibit 33: Sustained so long as Stewart can lay the foundation.

9. Exhibit 34: Sustained in part and overruled in part. The report is hearsay. It may be used to refresh a witness's memory but cannot be introduced as an exhibit or published to the jury.

10. Exhibit 36: Overruled. The defense objected that these records were not produced in discovery. Upon questioning, Mrs. Buckle conceded that although the records were not received in discovery, she had received the records a couple of years ago. Thus, the Court found there was no prejudice to the defense. However, Mrs. Buckle stated that she received the records after the deadline closed for deposing a representative from Tyson, the employer. The Court stated that the defense could have moved to re-open discovery for this purpose but chose not to. As to the exhibit itself, the Court ruled that the statement itself is hearsay, but a Tyson employee can testify as to how much Stewart earned, how many

13

weeks he was out of work, et cetera.

11. Exhibits 37-38: Overruled subject to Stewart laying a foundation as to authenticity.

B. <u>Plaintiffs' Objections to Defendants' Exhibits</u>.

These objections were resolved in the ruling on the motion-in-limine.

V. <u>Miscellaneous</u>.

A. <u>Witnesses</u>.

The pretrial order indicated that the Defendants have an expert witness, Kerry Najolia. The Plaintiffs have no objection to this expert, and there has been no *Daubert* motion or other motion to limit certain testimony of Najolia.

The pretrial order also indicated that the Defendants reserved the right to call any person identified during discovery, any person necessary to identify or authenticate evidence, and/or any witness necessary to impeach or rebut another witness. The Court will not honor these reservations.

B. <u>Settlement Possibility</u>.

The Court inquired about the status of settlement discussions. The parties had differing views on where negotiations stood at this time. Mr. Cameron represented that there had been no settlement discussions whatsoever. Mrs. Buckle said, however, that they met with a Fifth Circuit mediator in 2022 or early 2023, before the case was decided on appeal. That mediation was unsuccessful. The Court informed both parties that they should be conscious of the fact that the landscape has changed significantly since the

appellate opinion was issued: both parties will face factual, legal, and evidentiary challenges if they take this to trial. The Court opined that the facts are not favorable to the Defendants. On the other hand, the Plaintiffs may lack an expert witness. Counsel for both parties should advise their respective clients to reengage in settlement discussions with an open mind and with awareness of the uncertainty inherent in taking this case to a jury trial. Mr. Cameron responded that he had tendered a settlement offer to the Defendants within the past few months, although the parties disagreed on the terms of that offer. Defendants are **ORDERED** to respond to the Plaintiffs' offer by **April 10, 2024**.

    C.    <u>Consent</u>.

The issue of consent is heavily contested in this matter, both factually and legally. The Court provides the parties with the following guidance, which will govern this issue at trial.

In order for Smith's silence to constitute implied consent, it must have been preceded by a request—either explicit or implicit—for consent to enter and/or search. Record Document 71, p. 12. This Court has held that standing by or nonresistance does not constitute implied consent. *Id.* at 14. On appeal, the Fifth Circuit addressed the issue of consent. It stated that, taking Smith's version of the facts as true,

> If the officers at the front door did not request permission to enter Smith's home either implicitly or explicitly, then they could not reasonably believe that Smith's silence or acquiescence gave them permission to enter. At most, they asked if anyone else was inside the home, but that does not amount to an express or implied request to enter her home. Without such a request, Smith's silence cannot amount to consent for Barker to enter her home.

*Smith v. Lee*, 73 F.4th 376, 382 (5th Cir. 2023). The Fifth Circuit made an identical finding with respect to Lee's entry into the house:

> Again, if the officers did not request permission to enter Smith's home either implicitly or explicitly, then they could not reasonably believe that Smith's silence or acquiescence gave them permission to enter. . . . Accepting Plaintiffs' version of the facts as true, the officers never directed any express or implied request at Smith to enter her home. Without such a request, Smith's acquiescence cannot amount to consent.

*Id.*

The Fifth Circuit also held that Lee is entitled to rely on information provided to him by other officers, such that if Barker told Lee that Smith consented to the search, Lee is entitled to rely on that statement. *Id.* at 383. "Barker's alleged statement is material because Lee is entitled to reasonably rely on information provided to him by other officers. *Gates*, 537 F.3d at 430 ("the Supreme Court has held that police officers may act on the basis of information known by their colleagues in conducting searches and seizures.")." *Id.* at 383. The Fifth Circuit further stated,

> In his deposition, Lee explained that he would have to be satisfied that he had permission to enter Smith's home since he was the one entering with the canine. He also explained that the officers held a meeting before both searches where it was "very clear that we had to have [permission] before we could enter the homes." According to Lee, Barker would not have told him they were good to go if he did not have Smith's consent. In his affidavit, Lee again stated he "was advised that [they] were 'good to go,' which meant officers had obtained consent to search." In his deposition, Barker testified that he did not ask for consent to search Smith's house. He also did not recall if any other officer asked for consent to search Smith's house. However, Barker later claimed in his affidavit that "based on all discussions that had occurred with Ms. Smith on her front porch, [he] believed Ms. Smith consented to a search of her home." Nowhere in Barker's police report, deposition, or affidavit does he attest to telling Lee they were "good to go" when they switched places. While it may have been reasonable in this context for Lee to rely on Barker's "good to go" statement as communicating that the officers had gained consent, there is a genuine

16

factual dispute as to whether this statement was made. Lee claims Barker would not have told him they were good to go if he did not have Smith's consent. But Barker admitted at the time of his deposition that he did not ask for consent and did not recall if any other officer had. He also never attested to saying these words to Lee. This dispute is material because Lee based his belief that the other officers had obtained consent on this purported statement. If the statement was never made, then that places Lee in the same factual scenario as Barker.

*Id.* at 383. The Fifth Circuit further held that if there was no consent, "Barker and Lee's entry would be objectively unreasonable in light of clearly established law." *Id.* at 384. The Court intends to instruct the jury on the aforesaid legal principles.

D. <u>Adverse Inference</u>.

A frequent issue in this case is Defendant Lee's failure to activate his police-issued recording equipment at the appropriate times while on duty. The Court recognizes this issue will be introduced at trial. However, the Court has previously ruled that the Plaintiffs are not entitled to an adverse inference instruction regarding Lee's failure to engage his body camera. *See* Record Document 71, p. 8.

VI. <u>Deadlines</u>.

Counsel shall submit to Chambers electronic courtesy copies of all submissions. The submissions shall be formatted in Word Format and e-mailed to **foote_motions@lawd.uscourts.gov**. Exhibits do not need to be e-mailed. Any submission that exceeds 50 pages in length must also be provided as a paper courtesy copy to chambers.

**Wednesday, April 17, 2024**

1. **Questions** that the parties would like the Court to ask or that they would like to ask themselves during **voir dire** shall be filed.

2. Proposed **joint jury interrogatories** shall be filed. If the parties are unable to agree as to any specific interrogatory, a separate proposal, supported by *pinpoint citations*, should be submitted for each contested interrogatory.

3. **Two (2) joint preliminary statements.** The first joint preliminary statement should be brief (no more than one or two paragraphs) and will be read to the jury venire during voir dire as an introduction to the case. The second, more detailed statement will be read to the impaneled jury as part of the preliminary jury instructions. The latter statement should include facts, burdens of proof, and basic statements of the relevant law as each party alleges it should apply to these facts. This statement is intended to provide "sign posts" for the jury and should also contain the parties' stipulations.

4. Counsel shall exchange those portions of **deposition testimony** they intend to use at trial (if any), other than the potential use of Burwell's deposition, for which dates were set earlier in these minutes. Counsel are to highlight objectionable portions and/or omissions of opposing counsel's excerpted deposition testimony and to note objections in margin. Unless excused for good cause shown, trial depositions for jury trials shall be videotaped. Any videotaped deposition must be edited to reflect any evidentiary rulings by the Court. If the Court allows a party to proceed without a video, counsel shall provide one person to read the deposition testimony from the witness stand.

**Friday, April 19, 2024**

5. **Stipulations** shall be filed. Proposed **joint jury instructions** shall be filed. Counsel shall follow the most recent edition of the Fifth Circuit Pattern Jury Instructions (available at www.ca5.uscourts.gov) to the extent possible. For state law, another source such as Johnson's may be used. If the parties are unable to agree as to any specific jury instruction, a separate proposal, supported by *pinpoint citations*, should be submitted for each contested instruction. Proposed joint jury instructions should be submitted in one document and in the order to be read to the jury.

6. **Plaintiffs** shall file their **final will call** list.
   *Any party listing a person on his "will call" list shall bear the responsibility of producing that witness at trial. Should any party fail to call a witness on his "will call" list, any other party may call that witness even if that witness

was not listed as its witnesses in the Pretrial Order. "May call" witnesses not timely converted to "will call" witness shall be dropped from the witness list and will not be permitted to testify, except for good cause shown or for impeachment purposes.

7. If **real-time** is requested, the parties must notify the Deputy Clerk of Court, Tennille Gilreath.

**Monday, April 22, 2024**

8. Counsel shall exchange trial exhibits (if not already).

**Wednesday, April 24, 2024**

9. Counsel shall submit two paper copies of **trial exhibits** to Chambers. Paper copies shall be submitted in three-ring binders, no larger than three inches, with each exhibit separated by a numbered tab. A descriptive index of exhibits shall also be provided.

10. **Defendants** shall file their **final will call** list. See paragraph 6 for will call requirements.

11. **Objections** to the use of an **exhibit** shall be filed. Objections should include the contested exhibit, as well as the Federal Rule of Evidence and a *pinpoint citation* on which the objection is founded. Unless the Court rules on an objection pretrial, a party is not relieved of the obligation to raise the objection during trial at the appropriate time.

12. Counsel shall exchange **demonstrative aids** and/or PowerPoint presentations to be used at trial (if any). If an aid is impractical to exchange, counsel shall exchange a description of the aid and why the aid itself may not be exchanged.

13. Counsel shall submit to Chambers **two (2) marked copies** of the excerpted deposition testimony (if any).

**Following Trial**

14. In order to preserve the record for appellate review, a second CD-ROM containing pdf-format versions of the exhibits that were introduced at trial must be provided to the courtroom deputy at the close of trial. The parties must also submit an exhibit list reflecting only those exhibits introduced at trial in Word format to the courtroom deputy.

**Standing Trial Orders:**

I. Jury questionnaires will be available at the front counter of the Clerk's office on the Friday afternoon before trial. Counsel are advised of the privileged nature of that information and that it shall not be copied or shared with anyone. Jury questionnaires MUST be returned to the courtroom deputy after jury selection. Counsel located outside of the Shreveport area may request an order from the Court authorizing them to receive electronic copies of the questionnaires.

II. Counsel will exchange the order of witnesses each morning before trial begins. A copy of the witness order shall be provided to the courtroom deputy at the same time. On the first morning of trial, counsel must also provide the courtroom deputy with a complete list of all witnesses to be read to the venire.

III. Counsel are to be prepared to use the equipment in the courtroom for evidence presentation. Counsel may contact Robin Enkey to make arrangements for instruction on the operation of the equipment.

IV. Counsel shall familiarize themselves with the local rules for this district.

V. Counsel should arrive in the courtroom at least **30 minutes** prior to trial, on each day of trial.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 10th day of April 2024.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE